543 A.2d 863

**S.E.W. FRIEL**

v.

**TRIANGLE OIL COMPANY.**

**No. 1520 Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 11, 1988.

J. Donald Braden (Michael R. Foster and Foster & Braden, on the brief), Centreville, for appellant.

Robert R. Price, Jr. (Robert R. Price, III, on the brief), Centreville, for appellee.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

Appellant, S.E.W. Friel ("Friel") is endeavoring to protect a food cannery it operates on land adjacent to property upon which the Triangle Oil Co. ("Triangle") seeks to locate an oil storage facility. The Circuit Court for Queen Anne's County affirmed the County Board of Appeals' decision approving the issuance of a permit to Triangle, and Friel noted this appeal.

Friel presents three questions for our consideration:

I. Was the Circuit Court correct in declaring the temporary zoning moratorium, void *ab initio* because it constituted a taking in violation of the Fifth Amendment to the United States Constitution?

II. Was the moratorium void because it was stated to be effective less than ten days after the adoption hearing, in contravention of Code Article 66B, Section 4.04(a)?

III. Did the Planning Commission and the Board of Appeals fail to independently review the project as

to surrounding use compatibility and safety as required by the Site Plan Requirements and Review Procedure?

## FACTS

Effective July 16, 1986, Queen Anne's County adopted a temporary zoning moratorium, called an "Overall Moratorium," to be in effect while the County completed a revised Comprehensive Plan and Zoning Ordinance ("Plan"). Various environmental factors necessitated the enactment of a new zoning plan. The moratorium was to expire on the earlier of December 31, 1986 or the adoption of the revised Plan, but was later extended to April 14, 1987.

Triangle applied for and was granted an exemption from the moratorium by Resolution No. 44, dated September 8, 1986. The exemption allowed Triangle to file for the permits required to develop an oil storage facility on an 8.5 acre parcel of land on Starr-Grange Hall Road. As grounds for the exemption, the Resolution stated: (1) the development would result in the relocation of an existing facility and would alleviate an existing potential health threat; (2) Triangle had been involved in obtaining permits for this property for over a year prior to the adoption of the moratorium; and (3) the proposed facility would not create additional sewage and was not inconsistent with the proposed Plan.

After obtaining the exemption, Triangle applied for and received, over Friel's objections, site plan approval and ultimately a building permit. Friel appealed to the Board of Appeals of Queen Anne's County, which made three findings:

(1) Friel, as a third-party non-applicant, has no right of appeal from the Planning Commission's approval of the Site Plan, but does have standing to appeal the grant of a building permit; (2) the Board of Appeals has no jurisdiction to review the grant of an exemption by the County Commissioners; and (3) inasmuch as the various State agencies,

upon whose expertise the Zoning Board relies, had given their approval to the technical aspects of the safety of Triangle's proposal, and because the proposed use is permitted by the land's "M-2" zoning, the Board of Appeals has no authority to deny Triangle's application on the basis of Friel's allegation of "incompatibility." The appeals board, therefore, affirmed the issuance of Triangle's permit.

Friel then appealed to the Circuit Court for Queen Anne's County. In a Memorandum Opinion and Order dated August 20, 1987, the court agreed with the Board of Appeals and upheld the issuance of the permit. The court also held that the grant of an exemption from the moratorium by the County Commissioners to Triangle was unnecessary because the Overall Moratorium was void *ab initio* as an unconstitutional taking of property without just compensation.

In response to a Rule 2-534 motion by Friel, on October 27, 1987 the trial court issued a supplemental Memorandum Opinion and Order. This Order addressed Friel's contention that Triangle's exemption was ineffective because no publication or public hearing preceded approval of the exemption. The court agreed with Friel that proper notice and hearing had not been given before the exemption was granted. Moreover, the court found that there was no evidence that the County Commissioners complied with the procedure dictated by the moratorium which permits amendments by the County Commissioners that are "based upon the advise [sic] of the Queen Anne's County Planning Commission and the Planning Director as to the progress in the development of the proposed Master Plan and development regulations."

The court also noted another ground for voiding the moratorium. The Maryland Code, art. 66B § 4.04 (1988 Repl.Vol.) provides, in part:

> (a) *Authority of local legislative body; public hearing.*—The local legislative body shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, estab-

lished, and enforced, and from time to time amended, supplemented, modified, or repealed. However, a regulation, restriction, or boundary may not become effective until 10 days after at least 1 public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard.

The court found non-compliance with this provision of the Code, and explained:

Unfortunately, the Overall Moratorium, which can certainly be classified as a "restriction" and also an "amendment," "supplement" or "modification" to the original Comprehensive Zoning Ordinance as amended to that point in time, was adopted July 15, 1986 to be effective from July 16, 1986. This was less than 10 days after the public hearing held on July 8, 1986 and in contravention of the last mentioned statutory requirement.

The court stated,

It can be concluded from these findings that the Court disagrees with the contention of Triangle that the adoption of the Overall Moratorium and Resolution No. 44 are not subject to the procedures prescribed in Code Article 66B and the [Queen Anne's County Comprehensive Zoning] Ordinance.

Nevertheless, these findings did not affect the court's ruling on Triangle's behalf on the ground that the Overall Moratorium was unconstitutional and invalid.

### I. Constitutionality of the Overall Moratorium

In its first argument, appellant contends that the moratorium was imposed for the public good, was temporary (lasting less than nine months), and, therefore, did not constitute a "taking" of private property without just compensation.

In *Ungar v. State*, 63 Md.App. 472, 492 A.2d 1336 (1985), *U.S. cert. denied*, 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986), this court was presented with a challenge to a sewer moratorium. In that case we explained:

"A regulation which prohibits a beneficial use of private property constitutes a fair exercise of the police power if the public interest generally requires it and the regulation is reasonably necessary to achieve the public goal without being unduly oppressive upon individuals." *Md.–Nat'l Cap. P. & P. Comm'n v. Chadwick,* [286 Md. 1] at page 9, 405 A.2d 241 [1979], *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 384 A.2d 748 (1978), *Smoke Rise, Inc. v. Washington Suburban San. Com'n,* [400 F.Supp. 1369 (D.Md.1975) ].

*Ungar,* 63 Md.App. at 481–82, 492 A.2d 1336.

The Overall Moratorium at issue was adopted "in the public interest to protect the health, safety and general welfare of the citizens of Queen Anne's County." A stated purpose was to avoid a flux of "speculative and poorly thought out development proposals prepared specifically to avoid the intent" of the new land use regulations that were being prepared. The moratorium did not affect the development of single-family homes that had received approval, or the development of multi-family and commercial structures that had received final site plan approval. Initially, the moratorium was to last less than six months; it was, however, extended and was in effect for almost nine months.

Nevertheless, the trial court held the moratorium unconstitutional. The trial court relied upon the recent Supreme Court decision, *First English Evangelical Lutheran Church v. County of Los Angeles,* —— U.S. ——, ——, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987), which held that

"temporary" takings which . . . deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation.

The trial court reasoned:

Because the Overall Moratorium did not provide for the payment of just compensation, it was unconstitutional as

applied to Triangle's property and was thus of no effect. . . .

Although Triangle is not seeking compensation for even a 6 month's "taking", it can certainly seek relief by way of a declaration of invalidity as to its site plan application.

We disagree with the trial court's analysis and conclusion. As the California Court of Appeals explained in *Guinnane v. City and County of San Francisco*, 197 Cal.App.3d 862, 241 Cal.Rptr. 787 (1987):

> Although the Supreme Court has determined that a temporary regulatory taking is compensable, there is nothing in *First English* which changes the rule that "taking" must occur before compensation may be claimed. In *First English*, the court *assumed* a taking had occurred. On the appeal from the trial court's order striking a portion of the complaint, the lower court and the Supreme Court *accepted as true* the allegation that the county's ordinance denied the landowner *all* use of the property. Thus, the court framed the issue before it as "whether abandonment by the government requires payment of compensation for the period of time during which regulations deny a landowner *all use* of his land." (*First English, supra,* 482 U.S. at p. —— [96 L.Ed.2d at p. 265, 107 S.Ct. at p. 2387], italics added.) The court remanded the matter for further proceedings on whether a regulatory taking had actually occurred: "whether the ordinance at issue actually denied appellant all use of its property or whether the county might avoid the conclusion that a compensable taking had occurred by establishing that the denial of all use was insulated as a part of the State's authority to enact safety regulations." (*Id.,* at p. —— [96 L.Ed.2d at p. 262, 107 S.Ct. at pp. 2384–2385].)

*Id.* at 868, 241 Cal.Rptr. at 790.

In the case at bar, we need not decide whether there was a compensable "taking" within the meaning of *First English* because Triangle did not and does not seek compen-

sation. Moreover, even if we assume *arguendo* that a "taking" did occur, we would not hold the moratorium void. The Fifth Amendment does not prohibit the taking of private property; it merely makes compensation a condition of the exercise of that power. *See First English,* 107 S.Ct. at 2385.

It behooves us at this point to stress again that we do not now decide whether *First English* is applicable to a temporary moratorium as occurred here. The Supreme Court specifically limited its holding to the facts before it; it did "not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like." *First English,* 107 S.ct. at 2389.

As the *Guinnane* court reasoned,

Although the United States Supreme Court in *First English* has now overruled the California Supreme Court's *Agins* decision on another point [*see Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)], there is nothing in *First English* which alters the established principle that the interim burden imposed on a landowner during the government's decisionmaking process, absent unreasonable delay, does not constitute a taking....

We therefore discern from *Agins* and *First English* that the temporary suspension of land use which occurs during the normal governmental decisionmaking process does not constitute a taking. Accordingly, the interim delay which occurred herein while the city studied the possible acquisition of plaintiff's property as an open space area did not constitute a compensable taking.

*Guinnane,* 197 Cal.App.3d at 869–70, 241 Cal.Rptr. 787.

In the case *sub judice,* we hold that the moratorium was constitutional.

## II. Effective Date of the Moratorium

■ Friel also assigns error to the trial court's holding that the moratorium was void because of its effective date.

The moratorium went into effect on July 16, 1986, eight days after a public hearing was held thereon. Article 66B, § 4.04(a) of the Maryland Code requires a minimum ten-day period between the holding of the requisite public hearing and the effective date of the County ordinance.

As appellant correctly asserts, however, a premature effective date does not void the County's action; rather, the effective date is delayed to comport with the statute. *See, e.g., County Council v. Carl M. Freeman Assoc., Inc.,* 281 Md. 70, 78, 376 A.2d 860 (1977); *Woelfel v. State,* 177 Md. 494, 504–05, 9 A.2d 826 (1939). Although the cases cited involved State laws, we would apply the rule equally to municipal ordinances. *See Yorkdale v. Powell,* 237 Md. 121, 130, 205 A.2d 269 (1964). Thus, we conclude the moratorium was not voided by its premature effective date.

III. Compliance with § 17.161

Section 17.161 of the "Amendment to Queen Anne's County Comprehensive Zoning Ordinance to Provide for Site Plan Requirement and Review Procedure" provides:

In reviewing the site plan the Planning Commission or its designee shall consider the standards and purposes of these regulations *with a view toward achieving a maximum of coordination between the proposed development and the surrounding uses;* the conservation of woodland and prime agricultural land; the protection of all wetlands; the conservation of fish and wildlife habitats; the locations of areas to be maintained in existing state; the protection of watercourses from erosion and siltation; and the safety and convenience of the public. To these ends, the Planning Commission or its designee shall consider the location of buildings, parking areas, and other features with respect to the topography of the lot and existing features, such as streams and large trees; the efficiency, adequacy, and safety of the proposed layout of internal streets and driveways; the adequacy and location of any open space provided, bearing in mind the possible effects of irregularly shaped lots; the ade-

quacy, location and screening of the parking lots; and such other matters as the Planning Commission or its designee may find to have a material bearing upon the stated standards and objectives.

(Emphasis added).

Appellant's attack focuses on the introductory phrase, and in particular on the words "maximum of coordination between the proposed development and the surrounding uses." Appellant contends that neither the Planning Commission nor the Board of Appeals properly considered the compatibility of a food cannery and a petroleum storage facility on neighboring parcels of land. Appellant complains that both agencies felt compelled to grant approval to Triangle because the proposed use is permitted by the property's "M–2" zoning. As the Board of Appeals stated, "[n]either the Planning Commission, the Zoning Administrator nor this Board has the authority to substitute its judgment for that of the County Commissioners in matters relating to what uses should be permitted in what district." According to appellant, this deference to permitted uses conflicts with the agencies' duty to achieve "compatible uses."

The concerns raised by Friel were fire safety, potential contamination of his food products through underground leakage, and aesthetic considerations. The record reflects that each of Friel's health, environmental and safety concerns were considered and addressed by the Planning Commission and the Board of Appeals. Various state agencies such as the Department of Health and the Department of Natural Resources approved Triangle's plans. Reliance on the opinion of these state agencies with regard to matters that are peculiarly within their competence was proper. *Amberley Community Ass'n v. Board of Appeals*, 229 Md. 261, 267, 182 A.2d 811 (1962).

Appellant now concedes that the technical requirements of Triangle's project were met, and that "if the Planning Commission and the Board of Appeals had reviewed the

project under the standards adopted in Section 17.161 of the Comprehensive Zoning Ordinance, the Circuit Court would be in no position to second guess these administrative agencies under the 'fairly debatable' doctrine."

Friel argues, however, that the proposed use is "incompatible" (within the meaning of § 17.161) with the existing use of his property. In essence, Friel is asking the County to reject an otherwise acceptable project because it is not aesthetically compatible with his business and will make a "poor impression" on his customers. As Friel testified before the Board of Appeals, "the people that come visit us that buy our product, once they ride down the road and see that old tank farm installation, will [not] hold S.E.W. Friel in the posture that we have developed in 82 years of business. They simply will not condone it, they will not like it." To this assertion, the Board of Appeals reasoned it could not "substitute its judgment for that of the County Commissioners in matters relating to what uses should be permitted."

Although the Board of Appeals has made a correct statement of the law, we also find some merit in appellant's argument and, therefore, shall remand pursuant to Maryland Rule 1071. We explain.

A site plan is a plan required to be submitted by the builder, showing the proposed location of the buildings, parking areas, and other installations on the plot, and their relation to existing conditions, such as roads, neighboring land uses, natural features, public facilities, ingress and egress roads, interior roads, and similar features.

Rathkopf, *The Law of Zoning and Planning* § 62.01 (footnote omitted).

Site plan review is a relatively recent feature of modern land use regulation. *See Moriarty v. Planning Bd.*, 506 N.Y.S.2d 184, 119 A.D.2d 188 (1986).

The discussion on "site plan review" in 5 Williams *American Land Planning Law* § 152.01 is instructive:

Many modern zoning ordinances contain provisions for site plan review, and this is among the most useful techniques employed in modern zoning. In many communities, especially largely built-up ones, most new development takes place by the assembly of several lots and their redevelopment by private investment, usually without public assistance. In regulating such redevelopment, site plan review performs a function analogous to subdivision control (on vacant land) and urban renewal (for worn-out areas). Like most administrative arrangements, such provisions may of course be misconceived or misused, to deal with matters far beyond their appropriate function. Properly conceived, such regulations are concerned primarily with (a) the layout of buildings and open space, including parking areas, and (b) the provisons for access to and from the public street system.

*Id.* at 281–282.

In direct opposition to the viewpoint espoused by appellant, *Williams, supra,* opines that:

[I]t is important that the distinction [between special permits and site plan review] be maintained—particularly in those states where the planning board is not permitted to take over the special permit function. If in the course of site plan review the planning board takes over the power to decide whether the proposed use is appropriate at that spot, in terms of its impact on the neighborhood, the traffic it generates, etc., then site plan review becomes assimilated to the special permit function, and there is no difference between them. In order to avoid this, it is therefore important in drawing up a site plan review ordinance to spell out the grounds of review in detail—and so to avoid making everything a special permit use by the planning board.

*Williams, supra* at 282 (footnote omitted). *Cf. Southland Corporation 7-Eleven Stores v. Mayor and City Council of Laurel,* 75 Md.App. 375, 541 A.2d 653 (1988).[1]

An expressly permitted use by zoning designation is "tantamount to a legislative finding that the use [is] in harmony with the general zoning plan." *Rathkopf* at 62–17 (citing *Darswan, Inc. v. Capellini,* 58 A.D.2d 892, 397 N.Y.S.2d 4 (1977)). Thus, in reviewing a site plan, the Planning Commission may consider only those factors specifically enumerated in the statute.

 In light of these principles, we conclude there is no merit to appellant's theory that the Planning Commission and Board of Appeals, in their decision making process, must consider the compatibility of existing and proposed uses. These bodies do not, under the guise of site plan review, have the discretion to deny a permitted use on the basis of a determination of "incompatible uses." As we noted, appellant construes the phrase "coordination between the proposed development and the surrounding uses" to mean "compatible uses." We reject this construction. The compatibility of uses is predetermined by the parcels' designated M–2 zoning. Rather, we conclude that the "coordination" to be achieved is environmental and aesthetic. The statute stresses preservation of the environment and safety. Among other things, therefore, the Planning Commission is told to consider the land's topography, the adequacy and location of open spaces, and the screening of the parking lots. To the extent that the record supports the appellant's assertion that aesthetics was not a consideration of the Planning Commission and the Board of Appeals, we agree that there was noncompliance with § 17.161. Moreover, the Planning Commission must exercise its independent discretion in reaching its decision. We note in particular § 17.166, entitled "Preliminary Site Plan Requirements

---

1. We believe that the Mayor and City Council of Laurel effectively endowed its Planning Commission with the authority to determine whether the proposed use was appropriate at the proposed location in terms of its impact on the traffic that would be generated there. The County Commissioners of Queen Anne's County did not bestow such broad powers on its Planning Commission.

and Review Procedure," subsection C "Action by Planning Commission," which provides:

> The Planning Commission shall not approve a final site plan if it finds that the development would not achieve a maximum of compatibility, safety, and efficiency; and the fact that a site plan complies with all of the stated general regulations, development standards, or other specific requirements of the zone shall not, by itself, be deemed to create a presumption that the proposed site plan is compatible with surrounding land uses and, in itself, shall not necessarily be sufficient to require approval of the proposed site plan.

### Remand

The trial court, in its Memorandum Opinion and Order dated October 27, 1987, held that the exemption granted to Triangle was procedurally defective because of noncompliance with §§ 21.21 and 22.22 of the Queen Anne's County Comprehensive Zoning Ordinance which specifies the proper procedure to amend the Overall Moratorium. Because the court held the Overall Moratorium unconstitutional and void *ab initio*, however, the defective exemption was irrelevant. Inasmuch as we have today upheld the validity of the Overall Moratorium, we remand to the Circuit Court for Queen Anne's County directing it to remand the matter to the Planning Commission for Queen Anne's County with instructions to require a reapplication by Triangle and, if made, to review the application under the standards set forth in Section 17.161 of the former Comprehensive Zoning Ordinance.[2]

---

2. The County Commissioners of Queen Anne's County, effective November 3, 1987, adopted a new Zoning Ordinance and Subdivision Regulations. Section 1003 provides in pertinent part:

 C. *Pending matters.* Any of the following matters filed after December 31, 1985, and prior to the effective date of this section shall be processed and/or decided in accordance with the ordinance in effect on the date on which the particular matter was filed:

 . . .

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

3. applications ... for site plan approval, if such application received preliminary approval by the Planning Commission prior to the effective date of this section.

In *Yorkdale v. Powell, supra,* it was held that "... a change in the law after a decision below and before a final decision by the appellate court will be applied by that court unless vested or accrued substantial rights would be disturbed or *unless the legislature shows a contrary intent....*" (Emphasis supplied). We discern a clear legislative intent on the part of the Commissioners for Queen Anne's County to apply the old rules rather than the new ones in this case.