Terry CAMPBELL, Richard Stevens, and Terry Tucker, Appellants (Plaintiffs Below),

v.

PORTER COUNTY BOARD OF COMMISSIONERS and Area III Ambulance Board, Appellees (Defendants Below).

No. 46A04–8910–CV–438.

Indiana Court of Appeals, Fourth District.

Jan. 28, 1991.

Gary S. Germann, Portage, for appellants.

Robert A. Welsh, Chesterton, for appellees.

CHEZEM, Judge.

### Case Summary

Plaintiffs–Appellants, Terry Campbell, Richard Stevens and Terry Tucker (collec-

tively, "Shift Captains"), appeal the summary judgment entered in favor of Defendant–Appellee, Area III Ambulance Board ("Board").[1] We affirm.

### Issue

Shift Captains present one (1) issue for our review, which we restate as follows:

Whether the speech set forth in the letter in question was "protected speech" under the First Amendment to the United States Constitution.

### Facts and Procedural History

The administrator of Area III resigned in September of 1981. The Board assigned his administrative duties, on a temporary basis, to three of its own members—Judy Fischer ("Fischer"), Lee Wright ("Wright") and John Howell ("Howell"). These individuals served as volunteer co-advisors in the administration of the ambulance service for Area III (which included the southern seven townships of Porter County) until January of 1982. At that time, Fischer indicated that she could not continue to volunteer so much of her time to the administrative duties for the ambulance service. The Board then asked Fischer and Wright to continue as temporary co-administrators at $5.00 per hour. The Board did not hire a full-time administrator for Area III because it was possible the County Commissioners would hire a single full-time administrator for all of Porter County.

Shift Captains were "at will" employees for the Board. They participated in administering and managing Area III, and were under the direct supervision of Fischer and Wright. They were aware the Board wanted to hire a full-time administrator for Area III, or have the County Commissioners hire an administrator for Porter County.

On February 2, 1982, the Shift Captains presented a letter to Fischer and Wright. The letter was addressed to the Porter County Commissioners, Porter County EMS Commission Members, and Area 3

1. This case was not transferred to the writing judge until on or about April 1, 1990.

Ambulance Board, and was authored by the Shift Captains. It appeared on the official stationary of the Board, and stated as follows:

> We, the captains and members of the Area 3 Ambulance Service, have unanimously decided to appeal the Area 3 board decision involving the choice of Judy Fisher [sic] and Lee Wright as co-administrators "advisors" of the Area 3 EMS.
>
> We were quite disappointed, when on August 31, 1979, the Area 3 board decided to designate one of their own board members as administrator of Area 3. We were told that this was a temporary situation until a full time EMS administrator was found or the county combined to form a total EMS package. As we all know, this never did transpire, and for two long years, we as a department, cooperated and did the best that we could. Finally, we could not stand by and allow the subversive and inadequate administrative situation to continue, so we exposed it for what it was. The poor design and the inability of this type of administrative set up to be effective in this type of service should have been more than evident.
>
> But, once again, we see this same administrative design being voted into effect. We see administrators who have absolutely no EMS experience or background, running an EMS department. Would it be feasible for an individual with absolutely no experience to be fire chief, police chief or county sheriff? Granted, there is a business side to EMS. The same captains have existed for the past three years. We have worked with the previous parttime [sic] administrator for over two years, and we have been very active in financial and budget decisions. We feel we have learned a great deal in handling the business phase of the department. We also know there is much more to learn and are interested in being given the opportunity to progress. Along with the business side is the most important part to EMS, that being patient care. For the last three years we, as a department, have been almost total-

ly responsible for the effectiveness of our own patient care.

> We feel that it is unnecessary and unreasonable to spend Area 3 budget funds on anything other than a career EMS administrator and that we can function without the assistance and expense of the co-advisors until a more permanent solution is found. We feel that if anyone has the proper background and experience to understand and pursue the goal and needs of an EMS department, it would be someone who has already been dedicated to the field of EMS, and will still be involved in the future. Anything else is not acceptable.

On February 8, 1982, the Board held a meeting to discuss the actions of the Shift Captains, and then terminated their employment with Area III. Shift Captains filed a Complaint against the Board, which was dismissed by summary judgment on February 7, 1989.

Other facts will be added as needed.

### Discussion and Decision

As noted by the Shift Captains, "[t]he issue of whether the speech or expression as set forth in the letter of February 2, 1982, was 'protected' is the only issue in this appeal." They argue that their employment with Area III was terminated because they exercised their right to free speech provided by the First Amendment.

■ When reviewing a summary judgment, the standard on review is the same as it was for the trial court: whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Farm Bureau Co-op. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, 195, *reh. denied.* Therefore, we stand in the position of the trial court and consider the same matters. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 161. With respect to this case, the issue is one of law for decision by the Court. Justice White, writing for the United States Supreme Court in *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684,

1690, 75 L.Ed.2d 708 (1983), stated that "[t]he inquiry into the protected status of speech is one of law, [and] not fact."

■ The law is clear that public employees do *not* abandon their First Amendment rights upon entering the work place. *Shafer v. City of Ft. Wayne*, 626 F.Supp. 1115 (N.D.Ind.1986). "[A] State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687. As noted in *Connick*, the First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. 461 U.S. at 145, 103 S.Ct. at 1689. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964). Accordingly, the U.S. Supreme Court has frequently reaffirmed that speech on public issues occupies the "highest rung of the heirarchy of the First Amendment values," and is entitled to special protection. *Connick*, 461 U.S. at 145, 103 S.Ct. at 1689, quoting *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982), *reh. denied; See also, Pickering v. Board of Education*, 391 U.S. 563, 566, 88 S.Ct. 1731, 1733, 20 L.Ed.2d 811 (1968).

A three-part test for determining whether an employee was wrongfully discharged for "speech" was developed in *Connick*. This test was recently discussed by the Indiana Supreme Court in *Indiana Department of Highways v. Dixon* (1989), Ind., 541 N.E.2d 877, 881, as follows:

First, the employee must be speaking on a matter of public concern about which free and open debate is vital to the decision making of the community. Second, the reviewing court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in running an efficient operation. Third, the employee's protected conduct must be a motivating factor in the State's decision to fire him. [Citations omitted.]

Indeed, judicial oversight is limited to protecting employee speech on matters of public concern. *Zaky v. United States Veterans Administration*, 793 F.2d 832, 837–838 (7th Cir.1986). As noted by the U.S. Supreme Court:

[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.

\*　　\*　　\*　　\*　　\*　　\*

While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.

■ The record in this case shows the Shift Captains have failed to establish the first part of the *Connick* test. There is no indication they were speaking on matters of "public concern." Whether such "speech" addresses a matter of public concern must be determined by the content, form, and context of a given statement. *Id.*

An examination of the letter in question reveals that the statements contained therein are about *internal* administrative matters. In the letter, Shift Captains challenge the selection of Fischer and Wright as co-administrators of Area III. They

contend that the administrative situation under these two individuals was "subversive and inadequate," but fail to elaborate. No explanation whatsoever is provided as to how or why the administrative situation was allegedly inadequate. Instead, Shift Captains proceed to indicate their frustration at being passed-over for, or not promoted to, administrator of Area III. The letter states in pertinent part:

We have worked with the previous part-time [sic] administrator for over two years, and we have been very active in financial and budget decisions. We feel we have learned a great deal in handling the business phase of the department. We also know there is much more to learn and are interested in being given the opportunity to progress.

■ The motivation of an employee for speaking is important in determining whether he was speaking personally or as a citizen on a matter of public concern. *Shafer*, 626 F.Supp. at 1118. Taken as a whole, the letter clearly indicates that the Shift Captains felt slighted by the Board. Such a grievance is a matter of personal interest and not subject to judicial oversight. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.

With respect to the internal administrative or office matters raised by Shift Captains, the question is whether they are of "public concern." Under the facts and circumstances of this case, we hold they are not. Besides failing to elaborate on the alleged problems, Shift Captains proceed to indicate in their letter that the ambulance service can function adequately *without* an administrator. They state that "we can function without the assistance and expense of the co-advisors until a permanent solution is found." If they can function adequately without an administrator, Shift Captains have failed to show that the administrative situation is having an adverse effect on the service provided to the public. Indeed, nowhere in the letter do the Shift Captains even hint that the ambulance service had been unable at any time to perform its responsibilities to the public in a competent and professional manner. This is not a matter of public concern. The law is well-established that the content of an employee's "speech" must be of importance to the society at large, and not to the employee alone, to be protectable under the First Amendment. *Shafer*, 626 F.Supp. at 1118.

An instructive case is *Connick v. Myers*, *supra*. There, an assistant district attorney brought a civil rights action in which she contended that her employment had been terminated because she exercised her constitutionally protected right of free speech and expression. The plaintiff had strongly opposed her proposed transfer to a different section of the criminal court. She prepared a questionnaire that she distributed to the other assistant district attorneys in the office concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns. 461 U.S. at 140–142, 103 S.Ct. at 1686–1687. The plaintiff was then discharged by the district attorney. The district court ruled in favor of plaintiff, which was affirmed by the Court of Appeals for the Fifth Circuit. *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687.

On appeal to the U.S. Supreme Court, the ruling was reversed. Justice White, writing for the Court, held that the discharge of the former assistant district attorney did *not* violate her constitutionally protected right of free speech and expression provided by the First Amendment. The questions and statements in the questionnaire (except as to working in political campaigns) were not matters of "public concern," but instead had to do with internal office matters of personal interest to the discharged attorney. As such, the speech in question was not "protected" under the circumstances by the First Amendment. *Connick*, 461 U.S. at 154, 103 S.Ct. at 1693.

In conclusion, because the statements in the letter do not address matters of public

concern, First Amendment protection is not available to the Shift Captains. We will not interfere with or question their dismissal by the Board.[2] "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690.

Affirmed.

MILLER and SHIELDS, P.JJ., concur.

[2]. Because the letter does not contain "protected speech," we do not need to consider or scrutinize the reasons for the dismissal of the Shift Captains. *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689.