**McCUTCHAN ESTATES CORPORATION, Gary W. Williams, Wilma Sue Williams, and Tom R. Wolf, Appellants–Plaintiffs,**

v.

**EVANSVILLE–VANDERBURGH COUNTY AIRPORT AUTHORITY DISTRICT, Evansville–Vanderburgh Area Plan Commission, and Indiana Department of Transportation, Appellees–Defendants.**

No. 82A04–9010–CV–482.

Court of Appeals of Indiana, Fourth District.

Oct. 31, 1991.

Leslie C. Shively, Noffsinger Price Bradley & Shively, Evansville, for appellants-plaintiffs.

Cedric Hustace, Bowers Harrison Kent & Miller, David Bunner, Evansville, Dennis K. McKinney, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellees-defendants.

CHEZEM, Judge.

### Case Summary

Plaintiffs–Appellants, McCutchan Estates Corporation, Gary W. Williams, Wilma Sue Williams, and Tom R. Wolf (collectively, "Developers"), appeal from the summary judgment entered in favor of Defendants–Appellees, Evansville–Vanderburgh County Airport Authority District ("Airport Authority"), Evansville–Vanderburgh Area Plan Commission ("Plan Commission"), and the Indiana Department of Transportation ("DOT"). We affirm.

### Issues

Developers present four (4) issues for our review, which we consolidate and restate as follows:

I. Was the trial court precluded from entering summary judgment for the Airport Authority by Indiana Trial Rule 56(C)?

II. Did the trial court err in determining that "[t]here was no 'taking' for which compensation would be required?"

### Facts and Procedural History

Developers allege that property they were developing as a subdivision was temporarily "taken" from them by the Defendants. The property in question is located near the Evansville Regional Airport.

In 1987, the Plan Commission gave primary approval to the subdivision proposed by Developers, and a plat for a portion of it was recorded. When Developers failed to record the remainder of the subdivision within the required eighteen (18) months, they had to apply once again for primary approval.

In 1989, Developers submitted the second part of the subdivision, called McCutchan Estates II, to the Plan Commission.

The Airport Authority then sent its representatives to a meeting of the Subdivision Review Committee on September 12, 1989. The representatives advised the Committee that the proposed subdivision was in the area of a potential runway set forth in the Airport Authority's 1980 Master Plan. Based on this information, the Committee denied primary plat approval, and recommended that Developers file an application with the Federal Aviation Administration ("FAA").

Thereafter, Developers filed an application with the FAA. They also filed an application under the Indiana Tall Structures Act with the DOT. Initially, the two agencies denied the applications for permits. In response, Developers filed administrative appeals. While those appeals were pending, Developers filed this litigation.

On October 3, 1989, the Airport Authority held a meeting at which it adopted its Position Statement 89–1. This statement directed the Airport Management to initiate steps to acquire some of the undeveloped property within McCutchan Estates. It also indicated the Airport Authority was in the process of updating its "Master Plan." The Airport Authority also stated that any attempts to acquire the real estate should *not* be considered as indicating the potential runway would be constructed.

On October 16, 1989, the Airport Authority held another meeting at which it rescinded Position Statement 89–1 and then adopted Position Statement 89–2 which indicated that it would not make any decisions regarding future runways or the acquisition of land for that purpose until runway improvements were evaluated by the Airport's Master Plan Consultant.

In January of 1990, the Consultant submitted several runway alternatives to the FAA. After reviewing them, the FAA advised the Airport Authority that the runway alternatives were feasible on May 3, 1990.

On May 14, 1990, after receiving recommendations from the Consultant, the Airport Authority determined that the runway in question would *not* be developed or included in its 1990 Master Plan. The Consultant had advised that there were at least two (2) alternatives to the potential runway. This new information was then communicated to the FAA and DOT, both of which promptly reversed their initial determinations and granted approval in June and July of 1990. The Plan Commission then granted primary approval of McCutchan Estates II at its next meeting on August 1, 1990.

### Discussion and Decision

This is an appeal from an entry of summary judgment, and our standard of review in such cases is well-established. When reviewing a summary judgment, the standard on review is the same as it was for the trial court: whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Rogers v. Lewton* (1991), Ind.App., 570 N.E.2d 133, 134. Therefore, we stand in the position of the trial court and consider the same matters. *Campbell v. Porter County Board of Commissioners* (1991), Ind.App., 565 N.E.2d 1164, 1166. We may consider the pleadings, affidavits, depositions, admissions, interrogatories and testimony. *Four Winns, Inc. v. Cincinnati Insurance Co., Inc.* (1984), Ind.App., 471 N.E.2d 1187, 1188, *reh. denied, trans. denied.* Any doubt as to the existence of a factual issue should be resolved against a moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, 487, *reh. denied.*

### I

Developers argue that the trial court "acted improperly" in granting summary judgment to the Airport Authority. In particular, they claim that the Airport Authority failed to comply with the requirement set forth in Trial Rule 56(C) that "[t]he motion shall be served at least ten (10) days before the time fixed for the hearing."

We note the record clearly shows that the Airport Authority did not file its

Motion to Dismiss until the day before the hearing on co-defendants' motions to dismiss (converted to summary judgment motions because of consideration of evidence outside of the pleadings). Thus, it would appear the motion was untimely, and violated the requirement set forth in T.R. 56(C). However, the record also shows that other motions seeking the same relief, and addressing the same issues, had already been filed by the co-defendants, DOT and Plan Commission. Accordingly, it was entirely appropriate for the trial court to enter summary judgment for the Airport Authority. We note that T.R. 56(B) provides in part: "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Therefore, even though the motion in question was untimely, the trial court had discretion to enter summary judgment for the Airport Authority because of the other motions filed by DOT and the Plan Commission.[1]

■ In addition, Developers have waived this issue by failing to object in the trial court to the Airport Authority's motion. The law is clear that a party's right to the ten-day notice may be waived under such circumstances. *Gomez v. Adams* (1984), Ind.App., 462 N.E.2d 212, 218; *Ahnert v. Wildman* (1978), 176 Ind.App. 630, 376 N.E.2d 1182, 1187.

## II

Developers next argue that the nine (9) month administrative delay in granting them primary approval of the subdivision constituted a temporary and unconstitutional "taking" of their property without just compensation. We disagree.

The law is well-established that private property will not be taken for public use without just compensation. As noted in *Department of Natural Resources v. Indiana Coal Council, Inc.* (1989), Ind., 542 N.E.2d 1000, 1002, "[t]he Fifth Amend-

ment provides that '[no] private property [shall] be taken for public use, without just compensation,' and, of course, applies to the states through the Fourteenth Amendment." However, this mandate "has become increasingly difficult to apply as the complexities of modern life have necessitated a wide variety of land use regulations." *Id.* Nevertheless, while property may be regulated to an extent, we will not hesitate to recognize it as a "taking" if it goes too far. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

■ Here, the pertinent question is whether the administrative delay was "extraordinary." *First English Evangelical Lutheran Church v. Los Angeles,* 482 U.S. 304, 321, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987). The key factor in evaluating the reasonableness of the length of time involved, for purposes of a temporary "taking" claim, is whether it amounts to an "extraordinary delay." *Dufau v. United States* (1990), 22 Cl.Ct. 156, 163, citing *First English,* 482 U.S. at 321, 107 S.Ct. at 2389. If there has been an "extraordinary delay" in the process of governmental decision-making, it may give rise to a temporary "taking" claim. *Id.*

On the other hand, the United States Supreme Court has also held that "[m]ere fluctuations in value during the process of government decision-making, absent extraordinary delay, are 'incidents of ownership [which] cannot be considered as a taking in the constitutional sense.'" *Agins v. City of Tiburon,* 447 U.S. 255, 263, 100 S.Ct. 2138, 2143, 65 L.Ed.2d 106 (1980). In other words, the mere fact that a party has suffered economic losses due to an administrative delay does not amount to an unconstitutional "taking." *Keystone Bituminous Coal Ass'n. v. DeBenedictis,* 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). The temporary suspension of land use which occurs during the normal governmental decision-making process does not constitute a "taking." *Guinnane v. City and County of San Francisco* (1987),

---

1. We also note that, if faced with the issue today, the trial court could alter the ten-day time limit upon a showing of "cause." A recent amendment to T.R. 56 added subsection (I),

which provides that "[t]he court, for cause shown, may alter any time limit set forth in this rule."

197 Cal.App.3d 862, 241 Cal.Rptr. 787, 791, *cert. denied* 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 47 (1988).

■ Developers argue that the trial court improperly weighed the evidence in determining "[t]here was no 'taking' for which compensation would be required." We disagree. The material facts were undisputed; therefore, the question became one of law which was properly decided during the summary judgment proceedings. *Johnson v. Patterson* (1991), Ind. App., 570 N.E.2d 93, 96.

The evidence in the record does not support the unconstitutional "taking" claim of Developers. They have failed to show that the nine (9) month administrative delay was "extraordinary." They have not directed us to any evidence in the record showing what the "normal" delay was for obtaining primary approval of proposed subdivisions in their area. Instead, we note that the facts and sequence of events indicate the delay was a reasonable one under the circumstances.

For example, upon learning of the potential runway through McCutchan Estates II in September of 1989, the Subdivision Review Committee denied primary approval and recommended that Developers file an application with the FAA. Developers then proceeded to file that application, and they also decided to file an application under the Indiana Tall Structures Act with the DOT. These applications for permits were later denied by the two agencies. In the meantime, the Airport Authority was holding meetings, and on October 16, 1989, adopted Position Statement 89–2, which indicated it would not make any decisions regarding future runways or the acquisition of land for that purpose until runway improvements were evaluated by the Airport's Master Plan Consultant. In January of 1990, the Consultant submitted several runway alternatives to the FAA. After reviewing them, the FAA advised the Airport Authority that the runway alternatives were feasible on May 3, 1990. Approximately one week later, after receiving recommendations from the Consultant, the Airport Authority determined that the runway in question would not be developed or included in its 1990 Master Plan. This was communicated to the FAA and DOT, both of which promptly reversed their initial determinations and granted approval in June and July of 1990. The Plan Commission then granted primary approval of McCutchan Estates II at its next meeting on August 1, 1990.

Furthermore, while there are no similar cases in our state, the conclusion that the administrative delay in this case was not "extraordinary" is supported by case law in other jurisdictions. *Compare, Guinnane v. City and County of San Francisco* (1987), 197 Cal.App.3d 862, 241 Cal.Rptr. 787, *cert. denied* 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 47 (1988) (summary judgment was proper because delay of more than one-year in processing real estate developer's building permit application, to study the possible environmental impact of the development, was not so excessive or unreasonable as to constitute a temporary taking); *Dufau v. United States* (1990), 22 Cl.Ct. 156, *affirmed* 940 F.2d 677 (1991) (entry of summary judgment was entirely appropriate because delay of almost 16 months in process leading to issuance of permits to fill wetlands for development was not an extraordinary delay so as to constitute a temporary taking of land).

We also note that the delay in this case is attributable to Developers. They had received primary approval for the subdivision in 1987. However, Developers failed to record the plat for McCutchan Estates II within the required eighteen (18) month period. Consequently, they had to go back and apply once again for primary approval. Had they not been dilatory in this regard, they could have proceeded apace with McCutchan Estates II.

Based on the facts and circumstances of this case, the nine (9) month delay was not "unreasonable" or "extraordinary." There was no temporary "taking." Developers' cause of action fails as a matter of law.

Affirmed.

MILLER and CONOVER, JJ., concur.