BURBANK-GLENDALE-PASADENA
AIRPORT AUTHORITY, a joint powers
agency, Plaintiff–Appellant,

v.

CITY OF BURBANK, a municipal corporation; James W. Van Loben Sels, in his official capacity as Director of the Department of Transportation of the State of California, Defendants–Appellees,

and

State of California, Intervenor–
Defendant–Appellee.

No. 97–55520.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 1, 1997.

Decided March 2, 1998.

---

* The panel unanimously finds this case suitable for the decision without oral argument. Fed. R. App. P. 34(a); Circuit Rule 34-4.

** Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Jennifer L. Spaziano, Los Angeles, CA, for plaintiff-appellant.

Dana C. Nifosi, Washington, DC, Dennis A. Barlow, City Attorney, City of Burbank, Burbank, CA, Perry M. Rosen, Cutler & Stanfield, Washington, DC, for defendants-appellees.

Susan L. Durbin, Deputy Attorney General for the State of California, Los Angeles, CA, for intervenor-defendant-appellee.

Before: SCHROEDER and KOZINSKI, Circuit Judges, and WHYTE,* District Judge.

Opinion by Judge SCHROEDER; Concurrence by Judge KOZINSKI.

SCHROEDER, Circuit Judge:

The Burbank–Glendale–Pasadena Airport Authority ("Authority") is engaged in a substantial expansion of terminal and parking facilities for the Burbank Airport. The City of Burbank ("Burbank") is reviewing the acquisition of land for that expansion, pursuant to California Public Utilities Code § 21661.6. The Authority filed this action to block Burbank's review, claiming that Burbank's implementation of the state statute in this case is contrary to federal law, and hence uncon-

* Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

stitutional under the Supremacy Clause, as well as other clauses of the United States Constitution.

The problem for the Authority is that it is a political subdivision of the State of California. The district court dismissed the action on the ground that it is barred under our court's decision in *South Lake Tahoe v. California Tahoe Regional Planning Agency,* 625 F.2d 231 (9th Cir.1980), which held that a political subdivision of a state lacks standing under federal law to challenge the constitutionality of a state statute. The Authority appeals, contending the Supreme Court has overruled *South Lake Tahoe* or, in the alternative, that we should recognize an exception to the *South Lake Tahoe* holding. We hold that the Authority's efforts to circumnavigate *South Lake Tahoe*'s broad, per se rule are ultimately unavailing and affirm the district court.

## BACKGROUND

The Authority is a "Joint Powers Agency" created by the cities of Burbank, Glendale, and Pasadena pursuant to Cal. Gov't Code § 6500. The Authority is the sole proprietor and operator of the Airport. The Authority wants to acquire approximately 130 acres of property located within Burbank, commonly referred to as the B–6 property, from the Lockheed Martin Corporation for the purpose of constructing a new passenger terminal at the Airport.

In April 1996, pursuant to authority granted by Cal. Pub. Util.Code § 21661.6, Burbank adopted "Procedures for Review by the Burbank City Council of Plan for Expansion of the Burbank–Glendale–Pasadena Airport" ("Review Procedures"). The Review Procedures provide that the Authority's proposed acquisition of the property for the new terminal may not begin until: (1) the Authority submits a plan detailing the proposed uses of the property to the Burbank City Council; (2) the Burbank City Council holds a public hearing on the plan; and (3) the Burbank City Council approves the plan.

In June 1996, the Authority filed this action in federal court against Burbank, seeking to have the statute and the Review Pro-

cedures declared unconstitutional, and to have their future enforcement enjoined. The Authority alleged that the statute and the Review Procedures: (1) violated the Supremacy Clause by regulating air safety, an area reserved for federal regulation; (2) violated the Commerce Clause by unduly interfering with or burdening interstate commerce; and (3) violated the Due Process Clause of the Fourteenth Amendment by being impermissibly vague. The Authority further alleged that even if the statute and the Review Procedures are facially valid, Burbank should be prevented from requiring compliance pursuant to the equitable doctrines of waiver and estoppel.

In September 1996, the Authority filed its First Amended Complaint, adding the California Department of Transportation as a party defendant. The Burbank City Council in October 1996 adopted a recommendation of its staff and disapproved of the Authority's expansion of the Airport as proposed, including the plan to acquire the B–6 property.

In April 1997, the district court, relying on *South Lake Tahoe,* entered an order dismissing the Authority's action for lack of standing because the Authority is a political subdivision of the State of California and cannot challenge the constitutionality of the statute and the Review Procedures in federal court. The Authority appeals.

## DISCUSSION

■ The issues raised by the Authority are all issues of law and all relate to whether this court should follow *South Lake Tahoe* in this case.

The Authority's primary contention is that *South Lake Tahoe* and the principles upon which it relied were impliedly overruled by the United States Supreme Court's decision in *Washington v. Seattle School District,* 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982). A divided panel of this court previously rejected this argument in *Indian Oasis–Baboquivari v. Kirk,* 91 F.3d 1240, 1243–44 (9th Cir.1996) (*"Indian Oasis I"*), *reh'g en banc granted,* 102 F.3d 999 (9th Cir.1996), *appeal dismissed,* 109 F.3d 634 (9th Cir.1997) (en banc).

■ Although *Indian Oasis I* has no precedential value, the arguments on both sides of the issue were thoroughly explored in the panel's opinions. Both the majority and minority discussed the Supreme Court decision in *Seattle School District.* That case concerned a school district's challenge to the constitutionality of a statewide voter initiative concerning school bussing. The Supreme Court upheld the school district's contention that the initiative violated equal protection. Despite the starkness of the Supreme Court's holding on the merits, the Court did not expressly address the question of standing, and thus did not directly consider whether the school district, unquestionably a political subdivision of the state, had standing to bring the action in the first place. We must conclude, as did the majority in *Indian Oasis I*, that *Seattle School District* does not constitute binding authority with respect to standing. *See United States v. Los Angeles Tucker Truck Lines, Inc.,* 344 U.S. 33, 38, 73 S.Ct. 67, 69–70, 97 L.Ed. 54 (1952).

In *Tucker Truck,* the Supreme Court discussed the effect of an opinion where the merits were decided, but jurisdiction was not raised or addressed, on the determination of whether jurisdiction exists when raised in a later case. The *Tucker Truck* court stated:

> The effect of the omission was not there raised in briefs or argument nor discussed in the opinion of the Court. Therefore, the case is not binding precedent on this point. Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio.*

*Id.,* 344 U.S. at 38, 73 S.Ct. at 69.

Relying on *Tucker Truck,* the panel majority in *Indian Oasis I* held that it was bound to follow *South Lake Tahoe.* It stated:

> Given the fact that we have explicit precedent on the point of political subdivision standing, and that the Supreme Court has never directly considered the issue, we cannot say that the weight of its implicit exercise of jurisdiction is sufficiently powerful to undermine the law by which we

are bound. We therefore remain obliged to follow *South Lake Tahoe.*

*Indian Oasis I,* 91 F.3d at 1244.

This court has followed the rationale of *Tucker Truck* in other decisions. *See Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1288 (9th Cir.1985); *Sethy v. Alameda County Water Dist.,* 545 F.2d 1157, 1159–60 (9th Cir.1976) (en banc); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 63 n. 4, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) ("[T]his Court has never considered itself bound [by prior sub silentio holdings] when a subsequent case finally brings the jurisdictional issue before us.") (citation and internal quotation marks omitted); *Webster v. Fall,* 266 U.S. 507, 510, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedents."). We find nothing in decisions of the Supreme Court or of this court to question the soundness of those rulings. Accordingly, we hold that *South Lake Tahoe* was not overruled by *Seattle School District.*

■ The Authority alternatively contends that even if *South Lake Tahoe* is still good law, we should recognize an exception to its holding for claims based on the Supremacy Clause. Several federal courts have apparently stated that, even though there is a general rule against standing on the part of a state subdivision to contest state statutes, standing may nevertheless exist where the state law is interfering with strong federal interests. *See Rogers v. Brockette,* 588 F.2d 1057, 1070–71 (5th Cir.1979) (permitting Supremacy Clause challenges); *South Macomb Disposal Authority v. Township of Washington,* 790 F.2d 500, 504 (6th Cir.1986) (suggesting that political subdivisions have standing to sue in some circumstances); *United States v. State of Alabama,* 791 F.2d 1450, 1455 (11th Cir.1986) (holding that no per se rule applies); *see also Amato v. Wilentz,* 952 F.2d 742, 754–55 (3d Cir.1991) (third party standing case that notes general rule as current law, but acknowledges that support for it may be waning); *City of Charleston v. Public Serv. Comm. of West Virginia,* 57

F.3d 385, 389–90 (4th Cir.1995) (stating that there is some support for the general rule, but that it has been applied mostly in Fourteenth Amendment cases, and that its expansiveness is in doubt).

This court, however, has not recognized any exception to the per se rule, and the broad language of *South Lake Tahoe* appears to foreclose the possibility of our doing so. *See South Lake Tahoe,* 625 F.2d at 233 ("political subdivisions" of a state lack standing to challenge statutes of the state itself, or one of its political subdivisions, on "constitutional grounds"). Indeed, the complaint in *South Lake Tahoe* included a Supremacy Clause claim, as well as violations of the Fifth and Fourteenth Amendments. *See id.* at 233. Accordingly, we must reject the contention that we should create such an exception at this point.

■ Finally, the Authority contends that because Burbank is a charter city, rather than a general law city, it is not a political subdivision of the state for purposes of its ability to challenge a state statute. The Authority relies upon Supreme Court holdings that subdivisions of the state are creations of state law and have the authority conferred upon them by state law. *See Hunter v. City of Pittsburgh,* 207 U.S. 161, 177, 28 S.Ct. 40, 46, 52 L.Ed. 151 (1907). *See also City of Trenton v. New Jersey,* 262 U.S. 182, 187, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923) ("A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit."); *United Building and Construction Trades Council of Camden County v. City of Camden,* 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984).

We do not believe these cases are dispositive of the federal standing issue before us. None were brought by a governmental or quasi-governmental entity. Moreover, charter cities in California generally are defined as political subdivisions along with other governmental entities. *See, e.g.,* Cal. Pub. Util. Code § 21010 (State Aeronautics Act governing airport operations in California, which defines a political subdivision as "any county, city, city and county, public corporation district or other political entity or public opera-

tion of the state"). *See also* Cal. Pub. Util. Code § 21690.6 ("The provisions of this article shall apply to any airport owned or operated by a political subdivision, including a charter city.").

■ We must deal with one further administrative matter. The City of Burbank has moved this court to take judicial notice of pleadings filed in a related state court action, *City of Burbank v. Burbank–Glendale–Pasadena Airport Authority,* No. EC022341 (Superior Court of the State of California). This state case was filed by Burbank after the district court entered its order of dismissal. The parties at argument informed this court that the state court action is proceeding pursuant to California state law, which permits challenges of political subdivisions to the constitutionality of state enactments under certain circumstances. *See Star–Kist Foods, Inc. v. County of Los Angeles,* 42 Cal.3d 1, 227 Cal.Rptr. 391, 395–96, 719 P.2d 987, 992 (1986). The motion for judicial notice is GRANTED.

The judgment of the district court is AFFIRMED.

KOZINSKI, Circuit Judge, concurring.

I join Judge Schroeder's opinion but write briefly to address appellant's suggestion that we reconsider *South Lake Tahoe,* at least insofar as it denies state instrumentalities standing to raise constitutional claims based on the Supremacy Clause. While we are bound by the law of the circuit, the fact that three other circuits seem to have recognized an exception to the per se rule of *South Lake Tahoe, see maj. op.* at 1363–64, might be a reason to reconsider the matter en banc. *See, e.g., United States v. Jose,* 131 F.3d 1325 (9th Cir.1997) (en banc).

Unfortunately, the cases from the other circuits do not merit emulation. Supremacy Clause claims do differ from other constitutional claims in this respect: Most constitutional claims pit the individual against the power of the government, while Supremacy Clause claims protect the interests of the federal government against encroachment by the states. Appellants argue that even if

state instrumentalities do not have personal rights, like those protected by the Bill of Rights, they are surely able to promote federal interests by litigating federal preemption claims against the state.

I am not so sure. A federal preemption claim, after all, asserts the supremacy of federal law over state law. Congress is free to exercise its powers under the Supremacy Clause, but can it conscript state instrumentalities to aid in destruction of the state's laws? Suppose Congress passes a statute and empowers the state's Attorney General to bring suit to set aside any state law inconsistent therewith. Since the Attorney General's responsibility is to enforce the laws of the state, is it consistent with his duties to task him with having some of those laws set aside? Or, what if Congress bestows that power on a member of the Governor's cabinet, such as the Secretary of Transportation? Can Congress drive a wedge between the Governor and a member of his cabinet by giving that official federal powers that conflict with his responsibilities as the Governor's political appointee? There is a plausible argument that Congress may not interfere with the functioning of state officials and instrumentalities by endowing them with powers and duties that conflict with their responsibilities under state law. *Cf. Printz v. United States*, —— U.S. ——, ——, 117 S.Ct. 2365, 2381, 138 L.Ed.2d 914 (1997) ("It is no more compatible with this independence and autonomy that [States'] officers be 'dragooned' (as Judge Fernandez put it in his dissent below) into administering federal law, than it would be compatible with the independence and autonomy of the United States that its officers be impressed into service for the execution of state laws.") (citation omitted).

How far such a limitation extends-if it exists at all-is something that bears thinking about. None of the circuits that have rejected *South Lake Tahoe* have considered the question, and neither have the parties before us. The issue deserves exploration before we carve out a Supremacy Clause exception to *South Lake Tahoe*. I am therefore content to await such reconsideration if and when a case arises where the question is given appropriate attention.