[No. B123632. Second Dist., Div. Seven. May 5, 1999.]

CITY OF BURBANK, Plaintiff, Cross-defendant and Appellant, v. BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY, Defendant, Cross-complainant and Respondent; THE STATE OF CALIFORNIA, Intervener, Cross-defendant and Appellant.

## COUNSEL

Dennis A. Barlow, City Attorney, Terry B. Stevenson, Assistant City Attorney; Cutler & Stanfield, Perry M. Rosen, Peter J. Kirsch and W. Eric Pilsk for Plaintiff, Cross-defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Roderick Walston, Chief Assistant Attorney General, Theodora P. Berger and Richard Frank, Assistant Attorneys General, and Susan L. Durbin, Deputy Attorney General, for Intervener, Cross-defendant and Appellant.

McDermott, Will & Emery, Richard K. Simon, Thomas A. Ryan, Andrea K. McIntosh and Michael L. Meeks for Defendant, Cross-complainant and Respondent.

## OPINION

**LILLIE, P. J.**—The City of Burbank (the City) and the State of California (the State) appeal from a summary judgment entered in favor of the Burbank-Glendale-Pasadena Airport Authority. The trial court found that because the City had delegated its powers under Public Utilities Code section

21661.6 to the authority, the City was without power to enforce the statute as against the authority. The trial court erred, and we reverse the judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

In 1977, the cities of Burbank, Glendale, and Pasadena entered into a joint powers agreement pursuant to Government Code section 6500, to acquire and operate the Burbank Airport, which had been privately owned and operated for many years before that. For that purpose, the joint powers agreement created the Burbank-Glendale-Pasadena Airport Authority (the Authority), which was empowered by Government Code section 6546.1, among other things, to acquire, operate, repair, maintain, improve and administer the airport.

The agreement was amended twice in 1978 and once in 1980. In 1991, the original agreement and the amendments were consolidated into a single amended agreement. As last amended, the agreement gives the authority enumerated powers, including all powers conferred by statute under Government Code section 6500 et seq., as well as the power of eminent domain over nonresidential property, pursuant to Government Code sections 37350.5 and 50470, and to "develop, construct, manage, maintain, operate, repair, renovate, improve, reconfigure, or dispose of real or personal property, including, without limitation, buildings, works, or improvements . . . ."[1] It requires the Authority to exercise its given powers in the manner provided in Government Code section 6500 et seq., and section 6546.1, and except as set forth in the agreement, "subject only to such restrictions upon the manner of exercising such powers as are imposed on the City of Burbank in the exercise of similar powers . . . ." The agreement expressly authorizes the Authority "to do all acts necessary or convenient to the exercise of the aforementioned powers."

The agreement and Government Code section 6546.1 prohibit the lengthening of runways, as well as any activity which would result in an increase in the size of the noise impact area. In addition, the Authority is required to comply with prescribed community noise equivalent levels and the implementation of noise monitoring and mitigation.

The airport's passenger terminal was built in the 1930's, and is still in use today. Although the terminal, particularly its location, does not conform to

---

[1] Government Code section 37350.5 permits a city to "acquire by eminent domain any property necessary to carry out any of its powers or functions." Section 50470 empowers local agencies to acquire real property "by purchase, condemnation, donation, lease, or otherwise," for use as an airport.

the design criteria of the Federal Aviation Administration (FAA), the airport continues to operate under FAA certification. In order to move the terminal to satisfy FAA criteria, the Authority took steps to obtain an adjoining 130-acre parcel from Lockheed Martin Corporation, prepared an "Airport Layout Plan" (the Plan) and obtained FAA certification of a final environmental impact statement (FEIS).

When the City received a copy of the Plan and FEIS, it proceeded to review the Plan and hold a public hearing pursuant to Public Utilities Code section 21661.6.[2] On October 15, 1996, by Resolution No. 24,878, the Burbank City Council rejected the Plan without prejudice to the Authority's submission of a new plan, consistent with, among other things, the City's objective of minimizing excessive noise and safety hazards.[3]

While the City's review was pending, the Authority filed an action in the federal district court challenging the validity of the review of the Plan, and the validity of Public Utilities Code section 21661.6, under the United States Constitution. In April, 1997, the district court action was dismissed on the ground that a political subdivision of a state lacks standing under federal law to challenge the constitutionality of a state statute, and the Ninth Circuit Court of Appeals affirmed the judgment of dismissal.[4] In the meantime, on August 7, 1996, the Authority initiated Los Angeles Superior Court case No. BC155222, a condemnation action against Lockheed, to acquire the property. That action proceeded, and after the Authority obtained an order for possession of the Lockheed property, the City, the State, and the Authority entered into a stipulation which allowed the Authority to undertake grading and environmental remediation, but no construction on the property, until further order of the court.

On December 23, 1996, while the federal action was still pending, the Authority filed a petition for writ of administrative mandate or in the alternative, traditional mandate, in the Los Angeles County Superior Court, No. ES004248. The Authority sought to void Resolution No. 24,878, on the ground that it was enacted in violation of its right to due process, because the

---

[2]Public Utilities Code section 21661.6 provides that in addition to any other requirement of law relating to the construction or expansion of airports, a political subdivision intending to expand or enlarge an existing publicly owned airport, must first submit a plan, upon which the city council shall conduct a public hearing. If the council approves the plan, the proposed acquisition of property may begin, and the use of property must then conform to the approved plan.

[3]The City also challenged the FEIS in federal court, but its challenge was ultimately unsuccessful. (See *City of Los Angeles* v. *F.A.A.* (9th Cir. 1998) 138 F.3d 806.)

[4]See *Burbank-Glendale-Pasadena Airport Auth.* v. *Burbank* (9th Cir. 1998) 136 F.3d 1360, 1361, certiorari denied October 5, 1998, __ U.S. __ [119 S.Ct. 173, 142 L.Ed.2d 141].

city council was biased and predisposed to reject the Plan. Based upon the judgment and findings in this case, the trial court granted the Authority's writ petition in case No. ES004248, and judgment was entered in that case on the same date. The City's appeal from that judgment was before us in *Burbank-Glendale-Pasadena Airport Authority* v. *City of Burbank* (May 5, 1999) B123635 (nonpub. opn.). Although we denied the City's motion to consolidate it with this appeal, and we issue separate opinions, the two appeals have been argued together.

On May 1, 1997, the City initiated this action against the Authority, by filing a complaint for declaratory and injunctive relief. The complaint sought to enjoin the Authority from acquiring or using the Lockheed property for airport expansion without its approval, and to affirm the validity and applicability of Public Utilities Code section 21661.6. On June 6, 1997, the State and the California Department of Transportation intervened in the action. On July 23, 1997, the Authority filed a verified cross-complaint against the City and the State, seeking a declaration that Public Utilities Code section 21661.6 is void and unenforceable, and to enjoin its enforcement.

On September 4, 1997, the Authority filed two motions for summary judgment or adjudication of issues. In one, the Authority claimed that the City and the State had no right to relief because Public Utilities Code section 21661.6 and the City's procedures were preempted by federal law and were unconstitutionally vague. The other challenged the enforcement of section 21661.6, as well, but on the ground that section 21661.6 violates the supremacy, commerce, and due process clauses of the United States Constitution. Also on September 4, 1997, the State filed a motion for summary adjudication of the Authority's two affirmative defenses based upon the supremacy and commerce clauses. On or about the same date, the City filed a motion for summary adjudication of the Authority's affirmative defenses based upon federal constitutional issues.

On October 17, 1997, the Authority filed a third motion for summary judgment. Again, the Authority sought essentially the same relief, to be free of the enforcement of Public Utilities Code section 21661.6, but on a different legal theory; it argued that the City had delegated to it all its powers under section 21661.6.

The procedure followed by the parties at this juncture is not clearly explained in the briefs or made entirely comprehensible by the joint appendix on appeal, filed pursuant to rule 5.1, California Rules of Court. The trial court's later statement of decision indicates that the City and the State filed

additional motions in response to the Authority's third motion; however, these additional motions do not appear in the appendix. On October 31, 1997, the trial court ruled on some of the motions by "adjudicating" various legal issues. The court directed the City to prepare an order, but the joint appendix includes only a copy of an unsigned proposed order.

On February 18, 1998, the court filed a statement of decision as to the parties' third round of motions. The trial court did not find that the City had expressly delegated its powers under Public Utilities Code section 21661.6, as suggested in the Authority's motion, but instead found section 21661.6 to be irreconcilably inconsistent with the power granted to the Authority to acquire land in furtherance of its operation of the airport. It granted the Authority's motion for summary judgment on that ground, and denied the motions of the City and the State.

Nevertheless, when judgment was entered on March 10, 1998, in favor of the Authority, it contained language declaring that the City "has delegated to the Authority any rights it may have under California Public Utilities Code section 21661.6." The judgment also dismissed the City's complaint and the State's complaint in intervention, and declared Public Utilities Code section 21661.6 and its "implementing procedures" unenforceable as against the Authority.[5] The City and the State filed separate, timely notices of appeal from the judgment.

## DISCUSSION

■ We review a summary judgment de novo. (*Kim* v. *Sumitomo Bank* (1993) 17 Cal.App.4th 974, 978-979 [21 Cal.Rptr.2d 834].) We review the ruling, not the rationale, and are not bound by the trial court's stated reasons supporting its ruling. (*Prilliman* v. *United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142].) However, our review is limited to the issues raised on appeal. (*Reyes* v. *Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].) Appellants do not contend there are triable issues of material fact. Instead, they contend the trial court erroneously interpreted the joint powers agreement and the relevant statutes, in particular Public Utilities Code section 21661.6.

Enacted in 1971, Public Utilities Code section 21661.6 reads, in its entirety, as follows: "(a) Prior to the acquisition of land by any political

---

[5]We found the judgment ambiguous, since it did not expressly grant an injunction, or even use the word "enjoin" in any of its forms, and did not expressly state that it was intended to be a final adjudication of both causes of action of the Authority's cross-complaint. In response to our request for clarification, the parties unanimously informed us that the judgment was intended to adjudicate both causes of action and to be final as to all issues between the parties in the action. We will therefore interpret the judgment as the parties do.

subdivision for the purpose of expanding or enlarging an existing publicly owned airport, the acquiring entity shall submit a plan of such expansion or enlargement to the board of supervisors of the county, or the city council of the city, in which the property proposed to be acquired is located. [¶] (b) The plan shall show in detail the airport-related uses and other uses proposed for the property to be acquired. [¶] (c) The board of supervisors or the city council, as the case may be, shall, upon notice, conduct a public hearing on such plan, and shall thereafter approve or disapprove the plan. [¶] (d) Upon approval of the plan, the proposed acquisition of property may begin. [¶] (e) The use of property so acquired shall thereafter conform to the approved plan, and any variance from such plan, or changes proposed therein, shall first be approved by the appropriate board of supervisors or city council after a public hearing on the subject of the variance or plan change. [¶] (f) The requirements of this section are in addition to any other requirements of law relating to construction or expansion of airports."

 Appellants contend the trial court erred in declaring Public Utilities Code section 21661.6 unenforceable as against the Authority, and in finding the City had delegated its powers under that section to the Authority. The Authority contends that section 21661.6 would give the City a "veto power" over all land acquisition, and that such a "veto power" is in direct conflict with its power to acquire land. This is so, the Authority argues, because by delegating to it the power of eminent domain, the joint powers agreement necessarily granted an *unrestricted* right to so acquire property, unfettered by any land use regulation.

 The fundamental objective of statutory interpretation is to ascertain and effectuate the intent of the lawmakers. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208 [271 Cal.Rptr. 191, 793 P.2d 524].) We begin with the words of the enactment, giving effect to its "plain meaning," before resorting to extrinsic aids. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) We construe statutes "as a whole, and in context, giving effect wherever possible to the usual and ordinary import of the language used, and avoiding interpretations which render a measure unreasonable, disharmonious, or superfluous in whole or in part." (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 24 [157 Cal.Rptr. 706, 598 P.2d 866].) "When two statutes touch upon a common subject, they are to be construed in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' [Citations.]" (*DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 778 [38 Cal.Rptr.2d 699, 889 P.2d 1019].)

 Upon review of the "plain meaning" of the words of the statute, we discern no conflict between Public Utilities Code section 21661.6 and the

Authority's power of eminent domain. There is no language in section 21661.6 which would annul, as the trial court found, the Authority's power to acquire real property. Indeed, the section does not purport to preempt or render void any other provision of law, but expressly applies "in addition to any other requirements of law relating to construction or expansion of airports." (See *id.*, subd. (f).)

Local agencies created under state law must comply with the City's building and zoning ordinances. (Gov. Code, § 53091; see *Kehoe* v. *City of Berkeley* (1977) 67 Cal.App.3d 666, 673 [135 Cal.Rptr. 700].) The City does not exempt even its own agencies from its building code (see Burbank City Code (Code), §§ 7-1-106.2, 7-1-107.8); or from its zoning ordinance. (Code, § 31-402.) Thus, prior to any construction, city agencies, and joint powers agencies created under state law, must obtain building permits and submit to site plan review. (See Code, §§ 31-402 to 31-404, 31-1909.) The design of proposed projects, including such aspects as the safety and efficiency of the means of ingress and egress, offstreet parking and circulation, access streets, and fire safety, are reviewed by the City's building official. (See generally, Code, ch. 31, arts. 14, 19; ch. 15; Burbank City Charter, §§ 15, 33, 35.) We found no exception for property acquired through eminent domain, and the Authority has not suggested that such an exception exists.

Thus, if the Authority were not required by Public Utilities Code section 21661.6 to submit to a plan review prior to the acquisition of property, it most certainly would have to do so prior to construction. The requirement of submitting to land use review prior to construction does not directly or necessarily conflict with real property ownership, or create a "veto power." (Cf. *Landgate, Inc.* v. *California Coastal Com.* (1998) 17 Cal.4th 1006, 1017-1018 [73 Cal.Rptr.2d 841, 953 P.2d 1188] [no regulatory taking by requiring building permits].)

The words, "veto power" or similar words or expressions do not appear in the plain language of Public Utilities Code section 21661.6, which merely requires the Authority to submit its development plan to the City *prior* to acquiring the real property. ■ "Where . . . legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive . . . . [Citations.]" (*Briggs* v. *Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1119-1120 [81 Cal.Rptr.2d 471, 969 P.2d 564].) We will not read unexpressed meanings into the statute which will render it unenforceable or meaningless. (See *Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].)

■ The Authority contends, and the trial court found, that the joint powers agreement delegated the review required by Public Utilities Code

section 21661.6 to it. If it were otherwise, the Authority reasons, its right to acquire land would be "illusory." The joint powers agreement contains no express language delegating any of the City's land use powers or any rights under section 21661.6. Indeed, there is no mention of section 21661.6 in either the agreement or in Government Code section 6546.1.[6] The reasoning of the Authority and the trial court would require finding an *implied* delegation of the City's powers to review proposed development for compliance with land use regulations.

Joint powers agreements must expressly state not only the purpose of the power to be exercised, but also provide for the manner in which the power will be exercised. (See Gov. Code, §§ 6503, 6508.) However, neither the agreement nor Government Code section 6546.1 makes any mention of the manner in which the Authority might review its proposed land uses. Grants of power to an administrative agency must include adequate safeguards to protect against misuse of that power. (*State Bd. of Education* v. *Honig* (1993) 13 Cal.App.4th 720, 751 [16 Cal.Rptr.2d 727].) And delegations of administrative or regulatory powers must include sufficiently definite directions for the administrative body in the manner of exercising its delegated powers. (*Katz* v. *Department of Motor Vehicles* (1973) 32 Cal.App.3d 679, 684 [108 Cal.Rptr. 424].) There is no language in the agreement or in Government Code section 6546.1 which indicates by what means the Authority should apply, for example, the building code, the fire code, the zoning ordinance, environmental laws, or any other land use regulations.

The Authority apparently perceives itself so unrestricted in the manner of exercising its claimed implied power of land use review, that it need undergo no review at all. However, a city may not delegate discretionary powers in such a way that results in a total abdication of those powers. (See *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 384 [71 Cal.Rptr. 687, 445 P.2d 303].) Land use regulation is an exercise of a city's inherent police power (see *DeVita* v. *County of Napa, supra,* 9 Cal.4th 763, 782; Cal. Const., art. XI, § 7), which must always be reposed somewhere. (Cf. *Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 823 [225 Cal.Rptr. 43] [police powers cannot be barred or suspended by contract or irrepealable law].) The implied power and unfettered discretion which the Authority reads into the joint powers

---

[6]The Authority states in its brief that the agreement grants it "the *exclusive* and *unrestricted* right to determine 'whether any development, repair, improvement, renovation or reconfiguration of the Airport Facility should be undertaken.'" We do not find the words, "exclusive" or "unrestricted" in the agreement.

agreement would amount to an impermissible abdication or suspension of the City's police power.

We do not agree that reasonable land use regulation renders the Authority's power to acquire land "illusory." The Authority's complaint that any land use review will completely interfere with its power to develop the property, is analogous to a claim of regulatory taking in violation of the Fifth Amendment, to which our Supreme Court responded, " 'A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired.' " (*Landgate, Inc.* v. *California Coastal Com.*, *supra*, 17 Cal.4th at pp. 1017-1018, quoting *United States* v. *Riverside Bayview Homes, Inc.* (1985) 474 U.S. 121, 126-127 [106 S.Ct. 455, 459, 88 L.Ed.2d 419].)

Thus, it cannot be assumed the City's land use review will result in an arbitrary "veto." In the absence of a clear showing of an abuse of discretion, it is presumed that a public agency has reasonably and correctly applied its land use regulations. (See *Bringle* v. *Board of Supervisors* (1960) 54 Cal.2d 86, 89 [4 Cal.Rptr. 493, 351 P.2d 765].) And an abuse of discretion certainly cannot be determined without reviewing the manner in which it was exercised. (Cf. *Guinnane* v. *City and County of San Francisco* (1987) 197 Cal.App.3d 862, 868-869 [241 Cal.Rptr. 787] [asserted denial of the right to develop property is premature without final action on building-permit application].) The City's discretion must be reviewed pursuant to Code of Civil Procedure section 1094.5, after it has been exercised, not before. (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515-517 [113 Cal.Rptr. 836, 522 P.2d 12].)[7]

As an alternate reason to affirm the judgment, the Authority renews its trial court contention that Public Utilities Code section 21661.6 has been preempted by federal law regulating airport noise and safety, and therefore violates the supremacy and commerce clauses of the United States Constitution. The Authority relies upon *City of Burbank* v. *Lockheed Air Terminal* (1973) 411 U.S. 624 [93 S.Ct. 1854, 36 L.Ed.2d 547], in which the Supreme Court struck down a municipal ordinance which placed a curfew on jets in order to abate noise. The court held that the Noise Control Act of 1972 (42

---

[7]The Authority sought administrative mandamus relief in Los Angeles Superior Court case No. ES004248, and the City appealed the judgment in that action. (*Burbank-Glendale-Pasadena Airport Authority* v. *City of Burbank*, *supra*, No. B123635.)

U.S.C. § 4901 et seq.) preempted state and local control of aircraft noise through regulation of aircraft flight.[8] (411 U.S. at pp. 633-635 [93 S.Ct. at pp. 1859-1861].) The Authority makes the broad assertion that federal law preempts any action by a nonproprietor municipality to restrict airport noise.[9] Then it concludes that because the City attempted to use section 21661.6 to impose noise restrictions, federal law preempts section 21661.6.

The Authority recognizes that *Burbank* has been interpreted as invalidating only those local regulations which directly interfere with aircraft operations. (See, e.g., *Burbank-Glendale-Pasadena Airport* v. *Los Angeles* (9th Cir. 1992) 979 F.2d 1338, 1340-1341 ["The regulation of runways and taxiways is . . . a direct interference with the movements and operations of aircraft, and is therefore preempted by federal law"].) However, the Authority discerns a broader meaning in the following words in *Burbank*: "the pervasive control vested in EPA and in FAA under the 1972 Act seems to us to leave no room for local curfews *or other local controls*." (*City of Burbank* v. *Lockheed Air Terminal, supra*, 411 U.S. at p. 638 [93 S.Ct. at p. 1862], italics added.)

The Authority contends that "other local controls" must necessarily refer to any local regulation by a nonproprietor airport which might affect airport noise or safety, even indirectly, such as parking restrictions. However, our review of the opinion reveals no greater meaning in "other local controls" than those which might be used to control aircraft noise by direct regulation of the aircraft or the flight of aircraft. (*City of Burbank* v. *Lockheed Air Terminal, supra,* 411 U.S at pp. 627, 633-635 [93 S.Ct. at pp. 1856-1857, 1859-1861].)

Nor do the authorities cited by the Authority give *Burbank* the broad interpretation it urges here. Those which struck down local regulation did so because aircraft or flights were directly affected. (See *County of Cook* v. *Priester* (1974) 22 Ill.App.3d 964, 970 [318 N.E.2d 327, 331-332] [county regulation of the weight of the aircraft]; *Allegheny Airlines* v. *Village of*

---

[8]Now, see generally, the Airport and Airway Safety, Capacity, Noise Improvement, and Intermodal Transportation Act of 1992 (Pub.L. No. 102-581 (Oct. 31, 1992) 106 Stat. 4872, 49 U.S.C., subtitle VII.)

[9]*Burbank* left open what limits, if any, apply to a municipality which owns and operates an airport. (411 U.S. at p. 635, fn. 14 [93 S.Ct. at p. 1861].) A proprietor of an airport is the entity which owns, operates, and promotes it, and who has the ability to acquire necessary approach easements. (*San Diego Unified Port Dist.* v. *Gianturco* (9th Cir. 1981) 651 F.2d 1306, 1316-1317, cert. den. 455 U.S. 1000 [102 S.Ct. 1631, 71 L.Ed.2d 866].) The City does not claim to be a proprietor.

*Cedarhurst* (2d Cir. 1956) 238 F.2d 812, 814-815 [ordinance prohibiting air flights at less than 1,000 feet when passing over the village]; *American Airlines, Inc.* v. *Town of Hempstead* (E.D.N.Y. 1966) 272 F.Supp. 226, 227 [ordinance forbidding anyone from operating airplanes which create noise above a certain level].)

Other authorities cited by the Authority support local power to regulate airport noise, so long as the regulation does not directly affect aircraft or flight. The Ninth Circuit Court of Appeals explained in *San Diego Unified Port Dist.* v. *Gianturco, supra,* 651 F.2d at pages 1313-1314, that while a municipality may not control the source of the noise (the aircraft), it may use its police powers to mitigate the noise, such as the zoning power to assure harmonious development. "Congress has preempted only local regulation of the source of aircraft noise." (*Ibid.,* citing, inter alia, *Air Transportation Association of America* v. *Crotti* (N.D.Cal. 1975) 389 F.Supp. 58, 64-65 [California noise abatement provisions which do not intrude upon or affect flight operations and air space management are not preempted].)

■ Preemption of noise regulations which directly affect aircraft and flight operations is not express, but implied from the structure and purpose of federal aviation regulation. (*City of Burbank* v. *Lockheed Air Terminal, supra,* 411 U.S. at p. 633 [93 S.Ct. at p. 1859].) Congress has declared: ". . . while primary responsibility for control of noise rests with State and local governments, Federal action is essential to deal with major *noise sources in commerce* control of which require national uniformity of treatment." (42 U.S.C. § 4901(a)(3), italics added.) The noise sources which are in commerce are the aircraft. (*San Diego Unified Port Dist.* v. *Gianturco, supra,* 651 F.2d at p. 1314.) Thus, a local regulation may not restrict the use of aircraft or directly control aircraft emissions, but may otherwise use its land use powers to mitigate the noise. (*Id.* at pp. 1313-1314.)

Federal sovereignty of the airspace of the United States is exclusive. (49 U.S.C. § 40103(a)(1).) The FAA has the sole authority to regulate the use of airspace as necessary to ensure its efficient use and the safety of aircraft. (49 U.S.C. § 40103(b)(1).) This authority includes all aspects of aviation navigation, including air control towers, radio navigation systems, and other navigation aids. (*Bethman* v. *City of Ukiah* (1989) 216 Cal.App.3d 1395, 1403 [265 Cal.Rptr. 539].) It does not extend to regulation of ground facilities, which does not affect inflight safety. (See *United Air Lines, Inc.* v.

*Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 776 [187 Cal.Rptr. 387, 654 P.2d 157].)

■ We conclude from the foregoing authorities that local governments retain their power to regulate land use, even with regard to safety and noise control, so long as it does not touch upon the control of aircraft or airspace, or any aspect of aviation navigation. Nothing in the language of Public Utilities Code section 21661.6 permits or requires review of development plans which relate to noise or safety matters regulated exclusively under federal law. And the Legislature has expressly declared: "This state recognizes the authority of the federal government to regulate the operation of aircraft and to control the use of the airways . . . ." (Pub. Util. Code, § 21240.)

Thus, on its face, Public Utilities Code section 21661.6 does not intrude into areas of exclusive federal regulation. Still, the Authority complains that the City's intended *use* of the statute is to prevent development intended to improve the safety of the airport, and will therefore have the effect of such intrusion. However, the Authority's challenge in this action has been to the validity of the statute itself. ■ A law may not be held unconstitutional on its face simply because it might be improperly applied. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215].) We therefore do not reach the Authority's contentions regarding the application of the statute.

The Authority finally contends that because Public Utilities Code section 21661.6 provides no standards by which to apply it, it is impermissibly vague, and therefore violates the Authority's constitutional right to due process. We do not reach this contention, because the Authority has no standing to challenge the validity of a state statute under the Fourteenth Amendment of the federal Constitution. (See *Star-Kist Foods, Inc.* v. *County of Los Angeles* (1986) 42 Cal.3d 1, 6, 8 [227 Cal.Rptr. 391, 719 P.2d 987].) ■ "A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under which it may invoke in opposition to the will of its creator." (*Williams* v. *Mayor* (1933) 289 U.S. 36, 40 [53 S.Ct. 431, 432, 77 L.Ed. 1015].) "The same reasoning applies to the due process protections afforded under the California Constitution." (*Board of Supervisors* v. *McMahon* (1990) 219 Cal.App.3d 286, 296-297 [268 Cal.Rptr. 219].)

## Disposition

The judgment is reversed. Appellants shall recover their costs on appeal.

Johnson, J., and Neal, J., concurred.

A petition for a rehearing was denied June 1, 1999, and respondent's petition for review by the Supreme Court was denied August 11, 1999.