Filed 11/20/14  Platero v. Anchor Hocking CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ISMENIA PLATERO et al., | B250947 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC445557) |
| v. | |
| ANCHOR HOCKING et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Affirmed.

Law Offices of Martin L. Stanley, Martin L. Stanley and Jeffrey R. Lamb for Plaintiffs and Appellants.

Frost Brown Todd, Beth S. Naylor, Holland & Knight, Shelley Hurwitz, Acker & Whipple, Stephen Acker, Leslie Anne Burnet, Kelley E. Harman, for Defendants and Respondents.

The claims of appellants Ismenia Platero and Ronald Marroquin (together, "plaintiffs") arise from the deaths of their 15-year-old twin sons, Edward and Erick, in a fire which started in the boys' bedroom. Plaintiffs contend that the fire was caused by a defective candle product[1] manufactured and distributed by respondents Anchor Hocking, LLC and Home and Garden Party, Ltd. dba Celebrating Home (referred to individually as "Anchor Hocking" and "Celebrating Home" respectively, and together as "defendants"). The court granted summary judgment in favor of defendants based on its finding that plaintiffs failed to produce any evidence that a defect in the candle product caused the fire.

Plaintiffs appealed from the judgment entered following the grant of summary judgment. We agree that there is no triable issue of material fact regarding defendants' liability, and thus affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Platero purchased eight-inch tall glass-enclosed scented candles at a friend's apartment party about three months prior to the date of the fire. They were ordered from a company called "Home Interiors," and came in a box of three candles; one blue with an incense smell, one green with a pear scent, and one red with a baked apple or apple-cinnamon scent. According to the label on the bottom of the candles, they were manufactured and/or distributed by defendant, Celebrating Home. In discovery responses, plaintiff learned that defendant Anchor Hocking provided the glass containers for some of Celebrating Home's line of candle products.

The fire that caused the death of the victims in the early morning hours of August 12, 2010, occurred in a bedroom of the family's apartment. At 10:30 p.m. the previous evening, Platero observed one of the above-described candles in her twin sons' bedroom. It was lit. Sometime later, between 11:45 p.m. and midnight, she checked on her sons again, at which time she noted that the candle was still burning. Her son Edward

_____

[1] The term candle product refers to a candle surrounded by a glass container.

2

promised to put out the candle before he went to sleep. Platero went to bed at 12:55 a.m., without checking to ensure that the candle had been extinguished.

Platero was awakened by screams coming from the twins' bedroom. She ran to the room and opened the door to find smoke and flames. She attempted without success to put out the flames, then called 911. She rescued her other three children from the house but could not rescue the twins, who died in the fire.

The candle in the twins' room was the red one of the three candles plaintiff had purchased approximately three months earlier at her neighbor's party. The candle in question was never recovered by the fire investigator, who found no evidence of a candle or candle wax in the victims' bedroom. The fire investigator did find two candles in other rooms in the apartment, one blue and one white. It did not find any damage to the glass containers surrounding those candles.

The fire investigator found several electrical devices connected to an extension cord located in the wall adjacent to the dresser where Platero said that the lit candle had been placed.

The official cause of the fire was never determined by the fire department. The Fire Investigation Report does, however, state that "[m]ost probabl[y] the lit candle was responsible for the cause of the fire."

Plaintiffs filed a wrongful death complaint against the building owner on September 16, 2010. The complaint alleged that various Doe defendants "negligently developed, manufactured, marketed and distributed the defective candles" causing the deaths of plaintiffs' sons. Celebrating Home and Anchor Hocking were later brought into the suit as Doe defendants.

On June 25, 2012, Celebrating Home filed its Motion for Summary Judgment with supporting papers. On February 1, 2013, Anchor Hocking filed a Notice of Joinder in Celebrating Home's Motion for Summary Judgment, along with additional documents in support of the motion. In opposition to the motion, plaintiffs submitted the expert witness declaration of Marcello M. Hirschler, who opined that an unspecified defect in the candle and/or glass caused the deaths of the plaintiffs' sons. Anchor Hocking

3

objected to the Hirschler declaration, contending it was based on the assumption of facts which had no evidentiary support, and consisted of nothing but speculation and conjecture. The court agreed and struck the declaration. Finding no triable issue of material fact as to the liability of Anchor Hocking or Celebrating Home, the court granted the summary judgment in favor of defendants. The court found that "[n]either the candle nor the glass container, nor any trace of their presence, was established by physical evidence when the fire was investigated," and "[t]he absence of any physical evidence that either the candle or the glass container was defective in any regard leaves nothing but speculation in support of Celebrating Home and Anchor Hocking's liability."

Judgment in favor of defendants was entered on August 1, 2013, which judgment was amended on August 27, 2013 and August 29, 2013. Plaintiffs timely filed their Notice of Appeal.


DISCUSSION

Plaintiffs raise two issues on appeal. They contend that the trial court erred in excluding their expert's declaration, and that their "discovery responses were sufficient and defendants failed to meet their initial burden" such that the trial court erred in granting summary judgment to defendants. We consider each of these issues below.

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all of the evidence set forth in the moving and opposing papers except that to which objections have been made and sustained. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.) Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334; see also *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) If the defendant meets this burden, the burden then shifts to the

4

plaintiff to show "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).)

In performing the de novo review, the appellate court must view the evidence in the light most favorable to appellant as the losing party. (*Wiener v. Southcoast Childcare, Inc., supra,* 32 Cal.4th at p. 1142; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 121-122.) However, the scope of the appellate court's de novo review is determined by the issues properly raised and supported by citation to the record and legal authority. (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116; *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 373.) "De novo review does not obligate the appellate court to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues" of material fact to defeat a summary judgment motion. (*Lewis v. County of Sacramento, supra,* at p. 116; see also *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

In determining whether a trial court properly excluded the declaration of an expert witness presented by the opposing party to a motion for summary judgment, we apply the abuse of discretion standard. (See *Wiener v. Southcoast Childcare Centers, Inc., supra*, 32 Cal.4th at p. 1142; *Howard Entertainment v. Kudrow* (2012) 208 Cal.App.4th 1102.)

1. *The trial court properly excluded plaintiffs' expert's declaration*

In order to prove their case against defendants, plaintiffs were required to prove that the candle and/or the glass container had a specific manufacturing or design defect. (*Milwaukee Electric Tool Corp. v. Superior Court* (1993) 15 Cal.App.4th 547, 555.) "[U]nder either a negligence or a strict liability theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 479.) The only evidence produced in an attempt to satisfy plaintiffs' burden of producing evidence that the candle or glass container was defective and that such defect was the cause of the fire was the declaration of plaintiffs' expert, Mr. Hirschler. The trial court excluded this declaration, finding that it was based on pure conjecture and speculation.

5

There are three distinct requirements for admissibility of expert opinion: (1) the subject matter must be sufficiently beyond common experience that the opinion would assist the jury, (2) the witness must have appropriate qualifications, and (3) the opinion must be based on reliable matter. (Evid. Code, § 801.) The court struck the Hirschler declaration based on its failure to comply with the third requirement.

An expert's declaration "may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact." (*Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1232-1233 [an expert declaration in connection with a summary judgment motion should be rejected when the declaration is speculative, lacks foundation and is stated without sufficient certainty]; *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [expert's declaration that the injury was caused "more probably than not" by certain events was precluded when there was no foundation for the asserted facts].)

Mr. Hirschler opined nothing more than a hypothetical possibility that "the [candle] glass cracked and caused the fire." Then based on this unsupported hypothetical, he opined that there are "two possible reasons for a candle of this kind to crack"; the glass was either "too thin" or "insufficient to resist temperature of the burning candle." His declaration ignores any other potential causes for glass to crack, including common causes like impact or misuse. Mr. Hirshcler then extends his hypothetical further, opining that the glass container was "not properly designed in accordance with appropriate safety standards" and "if the glass had been thicker and/or designed and manufactured in such a way as to handle the high temperatures associated with burning candles there would not have been a fire in the apartment and the children would not have died in the fire."

Mr. Hirschler offered no facts in support of his initial assumption that the glass cracked or for any of his following conclusions based on that unsubstantiated assumption. Mr. Hirschler did not examine the candle, did not examine an exemplar candle, did not perform any testing, did not review the candle design or specifications; indeed, he did not

6

do anything but opine about a hypothetical defect in a factual vacuum. None of these speculative conclusions were supported by citation to any standard, measurement, specification, physical evidence, testimony, or any other fact that would indicate that the glass container (1) cracked, (2) was too thin, (3) or was improperly designed, or (4) would show how these hypothetical defects actually caused the fire. He simply chose a conclusion and then provided assumptions which would support the conclusion, rather than base his opinion on the known facts of the case.

While Mr. Hirschler broadly claimed his opinion was based on fire damage patterns, descriptions of the progression of the fire, and conclusions of the fire department, there is no explanation of how any of this evidence supports his opinion. He simply concluded that because the candle product possibly caused the fire, the glass must have been defective in design or manufacture. He failed to bridge the gap between connecting the possibility the fire was started by the candle to evidence that a defect in the glass container caused the fire. Mr. Hirschler's declaration was not evidence of anything. The trial court properly excluded the declaration as being based solely on speculation and conjecture.

Other than reiterating its argument made in the trial court that the Hirschler declaration should be "liberally construed," repeating the content of the declaration and stating that the expert's opinion was based on Investigator Sanchez's testimony,[2] plaintiffs make no argument whatsoever challenging the trial court's ruling that the Hirschler declaration opinions were based on mere speculation and conjecture and therefore inadmissible.

Plaintiffs rely on *Garrett v. Howmedica Osteonics Corporation* (2013) 214 Cal.App.4th 173 to argue that the Hirschler declaration was improperly excluded. In that

---

[2] None of Investigator Sanchez's testimony cited by plaintiffs support the contention that the candle or glass container contained a defect that caused the fire. Even if one were to "guess" – as Investigator Sanchez specifically indicated he was doing – that the lit candle caused the fire, that does not mean that the candle was defective. For example, the glass container could have sustained damage during plaintiff's use prior to the fire, or the candle product could have been knocked over on the night of the fire.

case, the plaintiff appealed the exclusion of his expert's metallurgist's declaration submitted in opposition to the defendant product manufacturer's motion for summary judgment. The plaintiff's expert declared that he "conducted extensive examinations of portions of the [allegedly defective] prosthetic device . . . using visual examination, optical microscopic examination, X-ray radiography, fluorescent dye penetrant examination, scanning electron miscroscopy, and such destructive testing as hardness testing, micro hardness testing, microstructural analysis, and chemical analysis." (*Id.,* at p. 187.) Based on his examinations, he determined that the fractured portion of the prosthesis was softer than the "minimum required hardness" in two of the three ASTM specifications covering the alloy for use in an implant and was less than the "expected hardness" of the third specification. (*Ibid.*) Division Three of this District Court of Appeal found that the expert's opinion should not have been excluded by the trial court based on the absence of more specific information on the testing methods and the results obtained. (*Ibid.*)

Unlike the plaintiff's expert in *Garrett v. Howmedica Osteonics Corporation, supra,* 214 Cal.App.4th 173*,* Mr. Hirschler did not conduct any examinations or testing at all on the candle in question, since the fire investigator was unable to recover any evidence of a candle from the fire residue. Moreover, not only did Mr. Hirschler not conduct any examinations or tests on the candle and/or the glass container, he did not inspect or test an exemplar candle product, review any testing reports or design specifications, or produce any other document to support his opinion. He did not explain the process he undertook to reach his opinions, or specify what safety standards he was referring to in his declaration. Unlike in *Garrett,* his opinions are more than just "not extensive;" they have no scientific basis and are nothing more than mere speculation as to the glass container's alleged defects.

Furthermore, all of the cases cited by plaintiffs in fact support the trial court's findings. (*Powell v. Kleinman, supra,* 151 Cal.App.4th at p. 123 [expert's opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural; expert's opinion rendered without a reasoned

explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because the opinion is worth no more than the reasons and facts on which it is based]; *Sanchez v. Hillerich & Bradsby Co.* (2002) 104 Cal.App.4th 703, 718 ["Case dismissing expert declarations in connection with summary judgment motions do so on the basis that the declarations established that the opinions were either speculative, lacked foundation, or were stated without sufficient certainty"]; *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1333 [declaration in opposition to a motion for summary judgment is to be liberally construed and should be admitted if it raises a triable issue of fact, but only if it is supported by a reasoned explanation and is not "conclusory"].)

In short, the trial court did not abuse its discretion in excluding Mr. Hirschler's declaration because it was without foundation and was based on speculation and conjecture. (*See Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108; *Bancomer, S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457.)

### 2. *Defendants met their burden on summary judgment*

Plaintiffs also argue that the trial court erred in granting summary judgment against them because defendants "failed in establishing their initial burden with respect to defective design." Again, we see no error.

Section 437c, subdivision (p)(2) reads as follows: "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown one or more elements of that cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to any cause of action.

9

Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-defendant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."

The party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that it is entitled to a judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Defendants moving for summary judgment bear the burden of persuasion that one or more elements of the cause of action in question "cannot be established" or that "there is a complete defense thereto." (*Ibid.*) The moving defendants can make this prima facie showing either by presenting evidence that conclusively negates an element of plaintiffs' cause of action or by presenting evidence that the plaintiffs do not possess, and cannot reasonably obtain, needed evidence. (*Ibid.*) If the moving defendants meet their initial burden, then the burden shifts to the plaintiffs to show that a material issue of material fact exists. (*Ibid.*)

Plaintiffs cite several cases which illustrate that a defendant cannot shift the summary judgment burden to the plaintiff by relying only on "an absence of evidence to support" an element of the plaintiff's cause of action. This is a correct statement of the law. Summary judgment indeed requires that the moving defendants present evidence, and not simply point out that plaintiffs do not possess and cannot reasonably obtain evidence, needed to prove their claims. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 856.) Here, defendants presented evidence that the candle and glass container were not available for inspection, that no exemplar candle or glass container was examined, that no defect in the candle or the glass container (or exemplars of same) was ever identified, that the fire investigator identified the electrical system as a potential cause of the fire, and that the official cause of the fire was undetermined. This shifted the burden to the plaintiffs to present evidence of a disputed issue of material fact. Despite all of their efforts, including protracted discovery over a period of several years, plaintiffs

10

were unable to locate any evidence to support their speculation as to the cause of the fire.

Plaintiffs also contend that "Respondents failed to meet their initial burden of negating design defect in the candle product under the risk benefit theory." We disagree.

A product is defective in design if the benefits of the design do not outweigh the risk of danger inherent in the design, the so-called "risk-benefits test." (*Garrett v. Howmedica Osteonics Corporation, supra,* 214 Cal.App.4th 173, 182.) The plaintiff bears an initial burden of making 'a prima facie showing that the injury was proximately caused by the product's design.' This showing requires evidence that the plaintiff was injured while using the product in an intended or reasonably foreseeable manner and that the plaintiff's ability to avoid injury was frustrated by the absence of a safety device, or by the nature of the product's design. If this prima facie burden is met, the burden of proof shifts to the defendant to prove, in light of the relevant factors, that the product is not defective." (*Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 678.) In other words, if the plaintiff has met his burden of demonstrating that the product's design caused the injury, the defendant manufacturer has to prove that the benefits of the product's design outweigh the risks of the design. (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 431.)

Plaintiffs rely on *McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111, for the proposition that, on summary judgment, the defendants need to prove that the benefits of the design outweigh its inherent risks. In *McCabe*, the plaintiff had made a prima facie case that the design of the air bags caused her injuries. (*Id.* at p. 1127.) Honda did not even dispute her evidence of causation. The burden then shifted to Honda to establish that the benefits of the design of the air bags outweighed its risks. (*Ibid.*)

Unlike in *McCabe v. American Honda Motor Co., supra,* 100 Cal.App.4th 1111, in the present case plaintiffs did not meet their initial burden of establishing causation. They offered no proof that the injury was proximately caused by the product's design. There were possible explanations for the ignition of the fire other than a defect in the

candle product, including an electrical system problem, the candle being knocked over, and the glass container sustaining damage after it left the defendants' control. Plaintiffs were unable to rule out any of these possibilities. Thus, the burden never shifted to defendants to prove that the benefit of the product design outweighed the risks of the design. As the burden never shifted to defendants, there was no need for them to produce expert witness declarations as to the benefits of the design of the candle product versus its relative risks.

*Disposition*

The judgment is affirmed. Defendants are to recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]

I concur:


KRIEGLER, J.

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

I concur in everything except the statement that the standard of review for evidentiary ruling in a summary judgment proceeding is abuse of discretion.  (See *Reid v. Google* (2010) 50 Cal.4th 512, 535; *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114.)


MOSK, ACTING P. J.